UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
VINCENT CILIBERTI,

        Plaintiff,

    - against -

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 3 and
AUSTIN MCCANN,

        Defendants.
-----------------------------------------------------------X

**MEMORANDUM
AND  ORDER**

08 CV 4262 (CLP)

   On October 20, 2008, plaintiff Vincent Ciliberti commenced this action against

defendants International Brotherhood of Electrical Workers Local 3 ("Local 3" or "the Union")

and Austin McCann, individually, alleging that: 1) the Union breached its duty of fair

representation under the National Labor Relations Act, 29 U.S.C. § 185 ("NLRA"), and Section

8(b) of the Labor Management Relations Act ("LMRA"); and 2) that defendant McCann, a

business representative of the Union, failed to provide representation for plaintiff during

grievance procedures, resulting in plaintiff's termination and suspension from the Union's job

list.

   Currently pending before this Court[1] is defendants' motion for summary judgment. For

the reasons set forth below, defendants' motion is granted.

---

[1]On June 30, 2011, the parties consented to the jurisdiction of this Court for all purposes.

1

## FACTUAL BACKGROUND

### A. Plaintiff's Factual Contentions

Plaintiff Ciliberti is a journeyman electrician and a member of Local 3 since April 1979. (Pl.'s Aff.[2] ¶ 3; Defs.' Mem.[3] at 1). In his Affidavit, plaintiff asserts that he is a member in good standing with the Union, current on his dues, and has never been disciplined or told that his work was unsatisfactory.[4] (Pl.'s Aff. ¶ 5). According to plaintiff, the Joint Industry Board of the Electrical Industry has an Employment Department, which is responsible for placing out-of-work Union members with Union contractors (the "Employment Department"). (Id. ¶ 8). Over the last 30 years, plaintiff has been assigned to approximately 74 job sites through the Union's Employment Department. (Id. ¶ 6).

In 1996, plaintiff informed the Employment Department that he could only work seven hours per day due to his handicapped father's need for supervision and assistance. (Id. ¶ 12). In December 2003, plaintiff was assigned to work on a project for a Union contractor, Fishback & Moore, at a project located at JFK Airport. (Id. ¶ 10). When he asked to remain assigned to the JFK job site to be near to his father, he was told he could accept a transfer to the Bronx or be

---

[2]Citations to "Pl.'s Aff." refer to the Affidavit of Vincent Ciliberti, filed January 17, 2012.

[3]Citations to "Defs.' Mem." refers to Defendants' Brief in Support of Motion, dated December 1, 2011.

[4]Defendants dispute this assertion as well as other facts as stated by plaintiff, and contend that three foremen, David Efrom, Timothy Cassar, and Anthony Annunziata, told plaintiff's employer, Dooley Electric, that plaintiff's work was unsatisfactory. (Defs.' 56.1 Stmnt ¶¶ 1-3). Plaintiff asserts that defendants have not cited any admissible evidence in support of these statements. (Pl.'s Rule 56.1 Counter-Statement of Facts, dated January 17, 2012 ("Pl.'s 56.1 Stmnt") ¶¶ 1-3).

terminated. (Id. ¶¶ 10, 11).

In December 2004, plaintiff was terminated by the foreman of PJS Electric, Inc. because he could only work seven hours a day due to his need to be close to his father whose health requires plaintiff to take him to doctors' appointments. (Id. ¶ 13). A bad report was issued against plaintiff even though he advised the Union of his hours. (Id.)

In January 2008, the Employment Department referred plaintiff to Dooley Electric ("Dooley"), where plaintiff worked for two months. (Id. ¶ 14). On or about January 15, 2008, Dooley assigned plaintiff to a project at 2 Columbus Circle, where he and an apprentice were assigned to drill holes in the cement for the installation of floor boxes. (Id. ¶¶ 16, 17). On February 19, 2008, upon completion of that assignment, plaintiff was advised by the job foreman, David Efrom, that he was being reassigned to New York Hospital under the supervision of Timothy Cassar. (Id. ¶¶ 17, 18).

After three weeks on that job site, plaintiff was advised that the work was winding down, he was no longer needed, and he was reassigned on March 3, 2008 to Long Island Jewish Hospital. (Id. ¶¶ 19, 20). He worked at that job site for two weeks partly under the supervision of Anthony Annunziata, until March 17, 2008, when he received a layoff slip. (Id. ¶ 22). He was told by Annunziata that he was unproductive and could not handle the workload. (Id.) Plaintiff claims that when he pointed out that he had only worked for Annunziata for a few days, Annunziata allegedly conceded that he could not properly judge plaintiff's work. (Id.)

Believing he had been terminated without justification or cause, plaintiff went to the Union offices on March 17, 2008, where he spoke to the secretary of Tom Bush, head of the Employment Department for the Union. (Id. ¶¶ 24, 25). He filed a grievance with the Union that

3

same day and was handed a letter signed by the Business Manager for the Union, advising him to report to the Union's offices that same afternoon for a meeting to resolve the grievance. (Id. ¶ 27). He had no time to contact witnesses or prepare for the meeting; he was just told to appear. (Id. ¶ 28).

When he arrived at the meeting, there were approximately twelve people who he later learned were members of the Union's Grievance Committee. (Id. ¶ 29). None of them introduced themselves to him and he does not know who was present. (Id. ¶¶ 29, 30). He was not provided with a Union representative at the meeting nor did anyone from Local 3 advocate on his belief. (Id. ¶ 31).

According to plaintiff, Dooley's Superintendent Nuszer offered three affidavits from individuals alleging that plaintiff could not handle the workload. (Id. ¶ 33). At that time, plaintiff was asked to leave the room. (Id.) Upon reentering the room, plaintiff was questioned about why it took him so long to complete certain tasks, to which he responded that he was new to the job and not familiar with certain "shortcuts," plus he assisted other workers, delaying the completion of his own work. (Id. ¶ 34). He cited his 30 years with the Union and further noted that at the three work sites, he had an assistant who was not being criticized. (Id. ¶ 35). At the conclusion of the meeting, he asked for an opportunity to question the three supervisors who had submitted affidavits – Efrom, Cassar, and Annunziata. (Id.) He was told to report to the Union Office on March 24, 2008, at which time he would be permitted to ask questions. (Id. ¶ 38).

On March 24, 2008, plaintiff reported to the Union Office, and although he requested to have his counsel present, that request was denied. (Id. ¶ 42). Although plaintiff claims that "no one from the Union stepped up to represent me . . ." (id. ¶ 43), he also states that Austin

4

McCann, the Local 3 Business Representative, told plaintiff that he was there to represent plaintiff at the meeting. (Id. ¶ 44). Plaintiff claims that he asked Efrom "[w]hat problem do you have with me,'" to which Efrom allegedly stated that "'all of [plaintiff's] work got done and he 'had no problem with [his] work.'"[5] (Id. ¶ 45). Plaintiff claims that after asking this one question, he was told by McCann "to shut up because [plaintiff] was making it worse for himself. . . ." (Id. ¶ 46).

Plaintiff claims that, as a result of "McCann's threat," he was unable to question Cassar and asked only one question of Annunziata. (Id. ¶ 47). Again, the parties disagree as to what was said by these witnesses, although plaintiff claims in his affidavit that Annunziata admitted that he could not judge plaintiff's work performance, having supervised him for only four days.[6] (Id.) Plaintiff claims that Annunziata's affidavit was based on an assessment of the sub-foreman. (Id.)

After the three supervisors left, the Committee adhered to its earlier decision to terminate plaintiff. (Pl.'s Aff. ¶ 48). Plaintiff claims that neither McCann or anyone else from the Union took any active role in representing plaintiff. (Id.) Plaintiff appealed the decision to Ray Melville, Assistant Business Manager, and the appeal was heard on April 7, 2008. (Id. ¶¶ 49-50). Plaintiff's request to have counsel present was again denied, and the decision to terminate plaintiff was eventually upheld. (Id. ¶¶ 50-51). According to plaintiff, the Union then declined

---

[5]Defendants dispute this assertion and have a different version of events that transpired during this meeting. (See discussion infra at 6-8).

[6]The Court notes that plaintiff's own deposition testimony contradicts this portion of his affidavit. When asked whether Annunziata admitted that he could not accurately judge plaintiff's work performance at the grievance meeting, plaintiff said "no." (See Plaintiff's Deposition transcript, dated July 18, 2011 ("Pl.'s Dep.") at 137).

to process his termination through arbitration. (Id. ¶ 52).

Plaintiff claims that his name was taken off the job list; he was told that he would have to find a job outside the industry and prove that he could maintain that job for six months before the Union would restore his name to the list. (Id. ¶¶ 39, 41). When he asked for a letter authorizing him to engage in non-Union work, he was told that the Union would not issue such an authorization. (Id. ¶ 40). Plaintiff claims that his attempts to find employment have failed because he has no recommendation from his prior employer and he cannot work for Union contractors so long as the Union refuses to refer him for work. (Id. ¶¶ 56-57).

## B. Defendants' Factual Contentions

Defendants dispute many of plaintiff's allegations, citing his deposition testimony in support. Specifically, defendants note that contrary to plaintiff's claim that Foreman Efrom told the Committee that he "had no problem" with plaintiff's work and that it all got done, plaintiff conceded at his deposition that Efrom told the Committee that plaintiff "had trouble understanding his assignment and gathering the proper materials." (Pl.'s Dep. at 65). With respect to Foreman Cassar, plaintiff conceded at his deposition that he had told the Committee that plaintiff had "a problem understanding directions." (Id. at 66). He also admitted that Foreman Annunziata told the Committee that plaintiff "had trouble using the coring machine." (Id. at 69-7). Plaintiff also conceded that on the day Annunziata terminated plaintiff, he was told that he "was unproductive and . . . couldn't handle the workload. . . ." (Id. at 91-92). Plaintiff also conceded at his deposition that despite his contention that Annunziata's report was based on his subordinate's observations, plaintiff lacked any basis for that statement, conceding, "I do not

6

know. He must have – I don't know," and admitting that he never heard Annunziata say "anything like that." (Id. at 168-69).

Plaintiff also admitted at his deposition that the Employment Department had referred him for 74 job referrals and that he had failed to report to some job sites. (Id. at 73-77). Plaintiff answered, "I don't know" when asked if he had refused those jobs before or after checking out the job sites, but he admitted that no one at the Union had told him he had a right to pick and choose the jobs. (Id.) He "did not recall" if he had received other job termination slips, based on his work being "careless" or "not productive." (Id. at 77). He did concede that five to six or maybe ten contractors had previously filed complaints with the Union based on plaintiff's refusal to work the required job hours,[7] or his refusal to report to a job site because a foreman had threatened him. (Id. at 5-7). He conceded that he had earlier reported that he could not work outdoors in bad weather and that he had never withdrawn that restriction because he claimed that "'they never asked me.'" (Id. at 22-23).

As additional support for their motion, defendants submitted affidavits from the three foremen – Efrom, Cassar, and Annunziata – as well as affidavits from Louis Laudisio, Ciliberti's partner, defendant McCann, Ray Melville, and Ronald Nuszer.

David Efrom, Foreman Electrician for Dooley, who supervised plaintiff over a five week period during January and February 2008, stated in his Affidavit that because plaintiff was "non-productive," he was forced to assign his only apprentice, Louis Laudisio, to work with plaintiff

---

[7]Defendants note that on numerous occasions, plaintiff was laid off when he refused to work an eighth hour. (Defs.' Mem. at 12, ¶ 7). Although plaintiff claimed that the Local 3 contract gave him the right to refuse to work that hour, he could not cite to any such provision in the contract. (Id. (citing Pl.'s Dep. at 38-39, 45-46-51)).

7

full time. (Efrom Aff.[8] ¶¶ 1-3). According to Mr. Efrom, Laudisio "performed most of the work," and eventually Efrom asked Nuszer to remove plaintiff from the job site. (Id. ¶¶ 2-3). Efrom denied ever stating that he was satisfied with plaintiff's performance; "I was not satisfied with any aspect of his work." (Id. ¶ 4).

Louis Laudisio confirmed that he "did most of the required work and . . . took over the direction of the job. Mr. Ciliberti usually stood around and talked, made many telephone calls, and frequently told jokes." (Laudisio Aff.[9] ¶ 3). According to Laudisio, on one occasion, Efrom told Laudisio that plaintiff was a "'bad worker'" and was being transferred because he was "not productive." (Id. ¶¶ 3-4).

Foreman Timothy Cassar stated that plaintiff worked under his supervision at Dooley for three weeks, during February and March 2008, after which Cassar told Nuszer that he "was dissatisfied with [plaintiff's] work." (Cassar Aff.[10] ¶¶ 1-2). Cassar disputed plaintiff's claim that although he performed a wiring job incorrectly, it was because Cassar gave him the wrong instructions. (Id. ¶ 3). Cassar also denied plaintiff's allegation regarding McCann's alleged coercion of Nuszer. (Id. ¶ 4).

According to Mr. Annunziata's Affidavit, he was employed by Dooley as a foreman electrician, and during March 2008, plaintiff worked under his supervision for four days.

---

[8]Citations to "Efrom Aff." refer to the Affidavit of David Efrom, dated August 31, 2011.

[9]"Citations to "Laudisio Aff." refer to the Affidavit of Louis Laudisio, dated April 29, 2011.

[10]Citations to "Cassar Aff." refer to the Affidavit of Timothy Cassar, dated August 1, 2011.

8

(Annunziata Aff.[11] ¶¶ 1-2). After observing Mr. Ciliberti's work over that period of time, Annunziata asked Superintendent Ronald Nuszer to remove plaintiff "[b]ecause he was non-productive." (Id. ¶ 2). He disputed plaintiff's rendition of his testimony before the Grievance Committee regarding the number of boxes plaintiff was able to install in seven hours; in fact, he expected plaintiff to put in 20 boxes to enclose the electric pipe. (Id. ¶ 4). Annunziata disputed plaintiff's allegation that defendant McCann coerced Nuszer to arrange for a "bad termination," describing the allegation as "false or delusional." (Id. ¶ 5).

Ray Melville, Local 3's Business Manager, stated in his affidavit that he supervises construction electrician grievances, usually "'bad terminations'" that may result in a decision not to refer terminated electricians until electricians who were laid off in a reduction in force have gotten jobs. (Melville Aff.[12] ¶ 1). According to Melville, the Employment Department of the Joint Industry Board of the Electrical Industry makes the determination as to the list and is a separate entity from the Union. (Id. ¶¶ 1-2). According to Mr. Melville, plaintiff remains unemployed largely because the Employment Department reviewed his record of 74 job referrals and the "bad termination" from Dooley and told him that the Department would not refer him until he had held a job on his own for six months. (Id. ¶ 4). Melville noted that plaintiff has failed to apply to any nonunion employer and he disputed plaintiff's claim that Local 3 employers must hire from the Employment Department. (Id. ¶ 6). According to Melville, the hiring hall is nonexclusive and Local 3 contractors can hire anyone they wish. (Id.)

---

[11]Citations to "Annunziata Aff." refer to the Affidavit of Anthony Annunziata, dated August 31, 2011.

[12]Citations to "Melville Aff." refer to the Affidavit of Ray Melville, dated August 1, 2011.

9

C. Procedural History

On May 2, 2008, plaintiff filed an Unfair Labor Practice charge with the NLRB, alleging
that the Union had failed to fairly represent plaintiff. (Defs.' Mem.[13] at 2). The charge was
dismissed on July 7, 2008, and plaintiff's appeal was subsequently denied on September 2, 2008.
(Id.) On October 6, 2008, the NLRB's General Counsel's Office of Appeals granted an
extension of time to allow plaintiff to file a Motion for Reconsideration. (Id.) That request was
withdrawn as confirmed by the NLRB on October 8, 2008.

Following the filing of the Complaint in this action, defendants filed a Rule 12(b)(6)
Motion to Dismiss. Plaintiff thereafter requested leave to amend his pleadings to add Dooley
Electric as a defendant. However, in his Amended Complaint, plaintiff failed to add Dooley and
has never sued the Joint Industry Board of the Electrical Industry, whose Employment
Department has suspended his referrals to new jobs. Instead, plaintiff added an allegation that
Dooley violated the CBA by discharging plaintiff "without proper cause" (Am. Compl.[14] ¶ 14),
and he withdrew his allegation that the Union violated its duty as a result of "personal and
political" hostility to plaintiff. (Compl.[15] ¶ 41; Defs.' Mem. at 3).

---

[13]Citations to "Defs.' Mem." refer to the Brief for Defendants Local 3, International
Brotherhood of Electrical Workers, AFL-CIO and Austin McCann, An Individual, dated
December 1, 2011.

[14]Citations to "Am. Compl." refer to plaintiff's first Amended Complaint, filed August
24, 2009.

[15]Citations to "Compl." refer to plaintiff's Complaint, filed October 20, 2008.

DISCUSSION

A. Summary Judgment Standards

It is well-settled that a party moving for summary judgment has the burden of establishing

that there is no genuine issue of material fact in dispute and that the moving party is entitled to

judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Since

summary judgment is an extreme remedy, cutting off the rights of the non-moving party to

present a case to the jury, see Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d

Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985) (stating

that summary judgment "is a drastic remedy and should be applied sparingly"), the Court should

not grant summary judgment unless "it is quite clear what the truth is and that no genuine issue

remains for trial." Auletta v. Tully, 576 F. Supp. 191, 195 (N.D.N.Y. 1983) (internal quotation

marks and brackets omitted), aff'd, 732 F.2d 142 (2d Cir. 1984). In addition, "'the inferences to

be drawn from the underlying facts . . . must be viewed in the light most favorable to the party

opposing the motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88

(1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Once the moving party discharges its burden of proof under Rule 56(c), the party

opposing summary judgment "has the burden of coming forward with 'specific facts showing

that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858

(S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a

properly supported motion for summary judgment may not rest upon mere allegation or denials

of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. Indeed, "the mere existence

11

of *some* alleged factual dispute between the parties" will not by itself defeat a properly supported motion for summary judgment. Id. at 247-48. Rather, enough evidence must favor the non-moving party's case such that a reasonable jury could return a verdict in its favor. Id. at 248.

In reversing a grant of summary judgment, the Second Circuit noted that the "'[t]rial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.'" Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## B. Defendants' Motion for Summary Judgment

Plaintiff's Amended Complaint contains two claims for relief: 1) a claim that the Union violated its duty of representation under the NLRA and LMRA by failing to provide plaintiff with representation and failing to protect plaintiff's employment; and 2) a claim that defendant McCann tortiously interfered with plaintiff's grievance process by failing to provide adequate representation "with the sole purpose of harming plaintiff." (Am. Compl. ¶¶ 51-60). Defendants move for summary judgment on plaintiff's claim against the Union for breach of the duty of fair representation on the grounds that plaintiff cannot demonstrate that his termination was not justified or was contrary to the terms of the collective bargaining agreement ("CBA"). Defendants also move to dismiss the claim against defendant McMann, arguing that the Court should decline to exercise supplemental jurisdiction over the claim.

12

### 1) Plaintiff's Claim Against the Union

#### a) Standards

In order to prevail on a hybrid Section 301 duty of fair representation claim, a plaintiff must establish: 1) that the employer breached the CBA; and 2) that the Union breached its duty of fair representation. See Sanozly v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d 279, 281 (2d Cir. 2005) (citing Delcostello v. Int'l Bhd of Teamsters, 462 U.S. 151, 164-65 (1983)). As the Supreme Court noted in Delcostello, "[t]he suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation which is implied under the scheme of the [NLRA]." Delcostello v. Int'l Bhd of Teamsters, 462 U.S. at 164. Although the employee may choose to sue only one defendant, "the case he must prove is the same whether he sues one, the other or both;" "the two claims are inextricably interdependent." Id. at 164-65.

With respect to the first element of plaintiff's Section 301 duty of fair representation claim, plaintiff must prove a violation of the collective bargaining agreement; otherwise "a violation of the duty of fair representation could not have harmed" him. Conn v. GATX Terminals Corp., 18 F.3d 417, 420 (7th Cir. 1994). In the absence of a violation of the CBA, plaintiff "would not have had a good claim for the union to prosecute on his behalf [. . . because] the violation of the duty of fair representation would have been harmless." Id. (internal citations omitted). See also White v. General Motors Corp., 1 F.3d 593, 595 (7th Cir. 1993) (noting that "[w]hen an employee's underlying contractual claim lacks merit as a matter of law, the employee cannot complain that the union breached its duty of fair representation in failing to process his or

13

her grievance").

In establishing the second prong of the test, plaintiff must show that "the union's actions or inactions are either arbitrary, discriminatory, or in bad faith." Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010). See also Vaca v. Sipes, 386 U.S. 171, 190 (1967) (same). Conduct is not arbitrary unless "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (citation omitted). Thus, a union "may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." Vaca v. Sipes, 386 U.S. at 191.

On the other hand, a union member does not have an absolute right to have their grievance taken to arbitration. Id. As the Supreme Court stated, "[i]f the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation." Id. Courts have made it clear that "the duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers, 34 F.3d 1148, 1153-54 (2d Cir. 1994); see also Barr v. United Parcel Service Inc., 868 F.2d 36, 43-44 (2d Cir. 1989) (holding that negligence or tactical errors on the part of the union are insufficient to show a breach of the duty of fair representation). The Fifth Circuit has commented:

> [E]very union decision which may in some way result in overriding

14

> the wishes or disappointing the expectation of an individual
> employee, or even an appreciable number of employees, does not
> in and of itself constitute a breach of the fiduciary duty of fair
> representation. . . .Thus, where the union, after a good faith
> investigation of the merits of a grievance, concludes that the claim
> is insubstantial and refuses to encumber further its grievance
> channels by continuing to process the unmeritorious claim, its duty
> of fair representation may well be satisfied.

Local Union No. 12, United Rubber, Cork, Linoleum & Plastic Workers of America v. NLRB, 368 F.2d 12, 17 (5th Cir. 1966), cert. denied, 389 U.S. 837 (1967).

### b) Analysis

The Union argues that summary judgment should be entered in its favor on the breach of the duty of fair representation claim because the plaintiff cannot establish that the employer violated the terms of the CBA by terminating plaintiff. (Defs.' Mem. at 6). The employer in this case, Dooley, assigned plaintiff to three different job sites. In support of its argument that plaintiff cannot prove that there has been a violation of the CBA, the Union points to the testimony and affidavits of the three supervisors who found plaintiff's work to be unsatisfactory. Defendant also relies on the testimony of the Union representatives who were present during the proceedings before the Committee. (Id.) In addition, plaintiff's own testimony and the notes of the Committee members indicate that the Committee was presented with similar evidence of plaintiff's deficient performance at plaintiff's grievance proceeding. (Id.)

The Court has been presented with ample evidence that plaintiff was terminated for cause. On March 13, 2008, Superintendent of Dooly, Ronald Nuszer sent a fax regarding plaintiff's termination, bearing the subject line "LAY-OFF FOR CAUSE VINCENT

CILIBERTI," to Tom Bush of the Employment Department. (Pls.' Mem, Ex. 10). In that transmittal, Nuszer indicates that Mr. Ciliberti worked at Columbus Circle for four weeks until Efrom "wanted him removed" because plaintiff "had trouble understanding his assignment and gathering the proper material to do the job." (Id.) Nuszer adds that Louis Laudisio, the apprentice who worked with Mr. Ciliberti, "did most of the work." (Id.) With respect to Ciliberti's work on York Avenue with Cassar, the transmittal states that Cassar "had to explain the job to Mr. Ciliberti a number of times and had to check on him constantly. . . After 3 weeks, [Cassar] asked me to remove Mr. Ciliberti." (Id.) With respect to Ciliberti's work at Long Island Jewish Hospital, the transmittal states that Annunziata asked Nuszner to remove Ciliberti because Annunziata indicated that "he does not have the time to give this man constant supervision and get his material for him." (Id.)

The Court has also reviewed the deposition testimony and affidavits of the foremen of the three job sites where Ciliberti worked, David Efrom, Timothy Cassar, and Anthony Annunziata, which are consistent with the termination transmittal and provide further support for the Union's claim that plaintiff's employment with Dooley was terminated for cause. When asked about Ciliberti's work performance, Efrom testified at his deposition that Ciliberti's work was "lousy" and that Ciliberti took "a lot more time than he should." (Efrom Dep.[16] at 16). When asked about Ciliberti's work ethic, Efrom testified that Ciliberti "liked to clean up early. I did say something to him." (Id. at 17). According to Efrom, Ciliberti "was lacking the skill and the work was lacking." (Id. at 24).

_____

[16]Citations to "Efrom Dep." refer to the transcript of the deposition testimony of David Efrom, dated October 13, 2011, and submitted as Exhibit 4 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.

16

Timothy Cassar testified at his deposition that Ciliberti was "laid back [and] allow[ed] his partner to receive the bulk of the responsibilities and didn't pay attention to what the layout was." (Cassar Dep.[17] at 14). Cassar testified that he called Ciliberti over and told him that he needed to pay more attention to instructions, but Ciliberti remained "laid back" and "showed very little interest in what was going on." (Id. at 15). According to Cassar, Ciliberti's work was "below average" and "it took a very long period of time [for Ciliberti] to do the work. There were a lot of errors. . . . I would have to lay the work out to him two or three times and it was still done incorrectly." (Id. 15). Cassar explained that Ciliberti was working with a partner and that while the work Ciliberti completed with the partner was satisfactory, when instructions were given to Ciliberti only, "the work had to be done over." (Id. at 24).

Finally, Anthony Annunziata testified at his deposition that he supervised Ciliberti's work for two of the four days that Ciliberti was working at Long Island Jewish Hospital. (Annunziata Dep.[18] at 14). According to Annunziata, Ciliberti took too long to complete his work. (Id. at 16). Annunziata supervised Ciliberti's work mounting boxes and testified that Ciliberti mounted fewer boxes than average. (Id.)

It appears that the deposition testimony of Efrom, Cassar, and Annunziata is consistent with their affidavits, their statements during the grievance proceedings, and also with the findings of the Grievance Committee. In connection with defendants' motion, plaintiff has submitted

_____

[17]Citations to "Cassar Dep." refer to the transcript of the deposition testimony of Timothy J. Cassar, dated October 13, 2011, and submitted as Exhibit 5 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.

[18]Citations to "Annunziata Dep." refer to the transcript of the deposition testimony of Anthony Annunziata, dated October 13, 2011, and submitted as Exhibit 6 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.

copies of statements made by the three foremen at the March 24, 2008 meeting. (See Pl.'s Mem.,[19] Exs. 12, 13, 14[20]). Based on those statements, it appears that each of the three foremen reported Ciliberti having performance problems. (See Pl.'s Mem, Ex. 12 (describing Efrom's report to the Committee that Ciliberti "was not getting enough work done;" "had trouble understanding his assignment"); Ex. 13 (describing Annunziata's statement to the Committee that Ciliberti "had trouble using the coring machine;" "had trouble doing the work;" "took off early" and "took off the whole day"); Ex. 14 (describing Cassar's statement that Ciliberti "had a problem understanding directions;" and "Did not show any interest in the job")). Although plaintiff contends that there were discrepancies between the foremen's statements to the Committee and their affidavits, a review of the two documents demonstrates that whatever little inconsistencies might be found, the position of all three foremen remain consistent throughout – namely, that plaintiff was terminated for cause.

The record of the Grievance Committee's findings also belies plaintiff's suggestion that the foremen's statements regarding the reasons for his termination have been inconsistent in any material way. The Grievance Committee's recommendation, dated March 17, 2008, found Ciliberti's termination justified, describing the reason as: "Not able to do job assigned & needs help or constant supervision." (Pl.'s Mem., Ex. 15). The Grievance Committee's report also contains a section detailing Ciliberti's response to the complaints about his performance. (See

---

[19]Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed January 17, 2012.

[20]Citations to "Pl.'s Mem., Ex. 12" refer to a copy of the March 24, 2008 statement by Efrom to the Grievance Committee. Citations to "Pl.'s Mem., Ex. 13" refer to a copy of the March 24, 2008 statement by Annunziata to the Grievance Committee. Citations to "Pl.'s Mem., Ex. 14" refer to a copy of the March 24, 2008 statement by Cassar to the Grievance Committee.

18

id.) Among other things, Ciliberti told the Committee, in response to Efrom's criticism relating to his obtaining supplies, that he had to "walk a long distance" from where he got the materials to the work site, and that he was "never warned" about being "too slow." (Id.)

In response to defendant's motion, plaintiff has not presented any other witness statements or evidence, apart from his own affidavit, that contradict the defendant's contention that the employer was justified in terminating plaintiff. However, many of plaintiff's statements in his affidavit differ from, if not contradict, his deposition testimony.

Although Ciliberti's affidavit denies that there were problems with his job performance as cited by the foremen's statements, in his deposition, plaintiff acknowledged that the three supervisors had problems with his job performance. Thus, in his deposition, Ciliberti denied that he had trouble gathering the proper materials to do the job (Pl.'s Dep.[21] at 57-58); denied that the apprentice, Laudisio, did most of the work (id. at 58); and denied that Cassar had to check on him constantly. (Id. at 60). However, in contrast to his affidavit, Ciliberti, in his deposition, would not go so far as to say that his supervisors were lying when they made certain negative statements regarding his performance. For example, he testified that he did not know if Cassar and/or Annunziata had asked Nuszer to remove him (id. at 61), and he did not know if Efrom was lying when he told the Committee that Ciliberti had trouble understanding his assignment and gathering the proper materials. (Id. at 65-66).[22]

---

[21]Citations to "Pl.'s Dep." refer to the transcript of the deposition testimony of Vincent Ciliberti, dated July 11, 2011, and submitted as Exhibit 11 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.

[22]In his affidavit, dated January 16, 2012, plaintiff asserts that he has never "been told that [his] work was unsatisfactory." (Pl.'s Aff. ⁋ 5). Instead, he asserts in his affidavit that his "work [for Dooley] was satisfactory" (id. ¶ 14), and that Annunziata was lying when he told plaintiff

19

Moreover, contrary to plaintiff's assertion in his affidavit that Dooley had no justification to terminate him, plaintiff acknowledged during his deposition that the three foremen made many of the same statements at the Committee hearing regarding his performance that defendants claim provided the basis for plaintiff's termination from Dooley. For example, although plaintiff claimed in his Complaint that Mr. Efrom "had no problem" with plaintiff's work, in his deposition, plaintiff conceded that Efrom had told the Committee that plaintiff had "trouble understanding the assignment and gathering the proper materials." (Id. at 65-66). Plaintiff also conceded that Mr. Cassar also told the Committee that plaintiff had "a problem understanding directions" (id. at 66), and that Mr. Annunziata had made similar statements, indicating that plaintiff was "unproductive," "had trouble using the coring machine," and "couldn't handle the workload." (Id. at 91-92). These statements, conceded by plaintiff at his deposition, are consistent with the affidavits filed by the foremen in this case and with the foremen's deposition testimony. Each of the foremen confirmed that they had asked Nuszer to remove plaintiff from their job sites because of work performance issues. (See Efrom Aff. ¶¶ 1-3; Cassar Aff. ¶¶ 1-3; Annunziata Aff. ¶ 2). Indeed, even plaintiff's partner, Lois Laudisio, submitted an affidavit, stating that plaintiff spent a lot of time on the telephone and talking, leaving Laudisio to do "most of the required work." (Id. ¶ 3).

Although plaintiff denies in his affidavit several of the deficiencies in his work performance cited by his supervisors, these portions of plaintiff's own testimony fail to present

that he was being laid off because he was unproductive and could not handle the workload. (Id. ¶ 22). Plaintiff further contends in his affidavit that "Dooley had no reason or justification for its interference with [his] employment and terminated [him] without just cause." (Id. ¶ 22). These statements are not entirely consistent with his deposition testimony.

20

any material issues of fact that would require a trial in light of the overwhelming evidence of numerous other deficiencies in plaintiff's job performance offered by the Union beyond those plaintiff specifically denied during his deposition. Rather, it appears that plaintiff has attempted to overcome the limited value of his deposition testimony on the issue of the reason for his termination by submitting an affidavit "crafted for the specific purpose of defeating [defendants'] motion for summary judgment." Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619 (2d Cir. 1996).

"[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. New York City Dept. of Corrections, 84 F.3d at 619. "If a party who has been examined at length could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969). "In Perma, [the Second Circuit] concluded that statements in an affidavit filed in response to a summary judgment motion could not create material factual disputes where none existed without such an affidavit." Hayes v. New York City Dept. of Corrections, 84 F.3d at 619. Here, plaintiff appears to have submitted an affidavit for the purpose of creating issues of material fact, even with respect to issues that had been foreclosed by plaintiff's deposition testimony. For example, plaintiff's statement in his affidavit that he had never been told that his work was unsatisfactory directly contradicts plaintiff's deposition testimony in which he admits that the three foremen criticized his work during the Grievance Committee meeting. (See supra at 19-20).

21

Not only has plaintiff failed to present any evidence to contradict the overwhelming evidence presented by the Union, but plaintiff has also failed to detail how the employer allegedly violated the CBA apart from the claim that plaintiff's employment was terminated without proper cause. (Pl.'s Mem. at 23). Nowhere in his affidavit or his deposition testimony has plaintiff even suggested a reason, other than job performance issues, that would allegedly constitute an improper reason for terminating him.

Plaintiff also barely addresses the Union's argument that in the absence of a breach of the CBA by the employer, there can be no Section 301 claim. Instead, plaintiff raises claims regarding the procedures followed by the Committee, alleging that he was denied the opportunity to have counsel present and that he was ordered to leave the room when Nuszer presented the affidavits of the three supervisors. (Pl.'s Mem. at 7-8). While these alleged procedural deficiencies are potentially relevant in determining whether the Union provided adequate representation to the plaintiff, they do not, however, diminish the strength of the evidence presented in support of the employer's decision to terminate plaintiff. Moreover, although plaintiff claims that the Union representative, Mr. McCann, tried to discourage him from questioning the witnesses, plaintiff concedes that he was given the opportunity to question his supervisors. (Pl.'s Aff. ¶¶ 37, 38). It also appears from the evidence that the information he did elicit from the supervisors was consistent with their affidavits. (Pl.'s Mem. at 16). In addition, electrical contractor Monet Milad, who reviewed plaintiff's appeal of the Grievance Committee's findings along with Ray Melville (Defs.' Mem. at 6), considered the documents presented to the Grievance Committee and "listened and participated with [Ciliberti] to get more facts on the

22

matter." (Pl.'s Mem., Ex. 17 (Milad Letter dated March 9, 2008); see also Melville Dep.[23] at 30-31). In denying the appeal, Milad stated: "Mr. Ciliberti did not provide any new evidence or information that would materially change the facts that led to his dismissal." (Pl.'s Mem., Ex. 17) Thus, Milad concluded that "the Grievance Committee's decision should be upheld." (Id.)

In response to the Union's motion for summary judgment, plaintiff has failed to present any evidence to suggest that the employer did anything except terminate plaintiff for cause based on performance issues. In light of the "factual and legal landscape" presented by the three supervisors' statements to the Committee, it cannot be said that the Union's conduct in refusing to pursue what appeared to be a meritless grievance was "so far outside [the] wide range of reasonableness as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. at 67.

Accordingly, having reviewed the evidence presented in connection with the defendant's motion for summary judgment, the Court finds that plaintiff has failed to establish the existence of a genuine issue of material fact relating to the employer's decision to terminate plaintiff. In the absence of any evidence suggesting that plaintiff was terminated for any reason other than cause, or that the CBA was violated in any respect, the Court concludes that plaintiff has failed to make out the first prong of a hybrid Section 301 duty of fair representation claim, and therefore cannot succeed on his claim of a breach of the duty of fair representation. Under these circumstances, where plaintiff has failed to sustain his claim under the first prong of the test, there is no need to evaluate the evidence with respect to the Union's representation, and therefore, the Court grants defendants' motion dismissing the claim against the Union defendant.

---

[23]Citations to "Mellville Dep." refer to the transcript of the deposition of Raymond Melville, dated July 15, 2011 and submitted as Exhibit 8 to plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.

23

### 2) Plaintiff's Claim Against Mr. McCann

Defendants also move to dismiss the claim against defendant McCann on the grounds that the Court lacks jurisdiction over this claim. (Defs.' Mem. at 18 (citing Morris v. Local 819, Int'l Bhd. of Teamsters, 169 F.3d 782, 784 (2d Cir. 1999))). Essentially, defendant McCann argues that an individual sued in his capacity as a Union representative is immune from liability in a duty of fair representation claim. Indeed, the law is clear in this regard; in Morris, the Second Circuit joined "the other circuits that have considered the issue and [held] that 29 U.S.C. § 185(b) and the case law provide a shield of immunity for individual union members in suits for breach of the duty of fair representation." Morris v. Local 819, Int'l Bhd. of Teamsters, 169 F.3d 784. See also Montplaisir v. Leighton, 875 F.2d 1, 4 (1st Cir. 1989) (holding that a union's agents were shielded from fair representation suits); Evangelista v. Inlandboatmen's Union, 777 F.2d 1390, 1400 (9th Cir. 1985) (same).

In his responsive papers, plaintiff does not appear to dispute the fact that his claim against defendant McCann is based on state law, under a theory that McCann "tortuously [sic] interfered with his employment." (Pl.'s Mem. at 23). In order to prevail on a claim of tortious interference, the plaintiff must establish that: (1) the existence of a valid contract; (2) defendant's knowledge of the contract; (3) defendant's intentional interference with the contract and a resulting breach; and (4) damages. Burba v. Rochester Gas and Elec. Corp., 139 A.D.2d 939, 939, 528 N.Y.S.2d 241, 242 (4th Dep't 1988).

Defendant McCann argues that in the event that the Court grants defendants' motion for summary judgment with respect to plaintiff's federal claim, the Court should decline to exercise supplemental jurisdiction over this state law claim because district courts routinely decline to

exercise supplemental jurisdiction when the claims over which the court has original jurisdiction are dismissed. (Defs.' Mot. at 19 (citing 28 U.S.C. § 1367(c)(3))). In the alternative, defendants argue that the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claim because his "tortious interference claim substantially predominates over the [duty of fair representation] claim inasmuch as the plaintiff seeks a plethora of 'general and specific' damages for 'distress, embarrassment and anguish'– not available in [duty of fair representation] lawsuits." (Id. at 19 (citing 28 U.S.C. § 1367(c)(2))).

As the Court is granting defendants' motion for summary judgment with respect to plaintiff's only federal claim, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claim.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment as to plaintiff's claim against the Union is granted. The Court declines to exercise supplemental jurisdiction over plaintiff's state law claim against McCann.

The Clerk is directed to send copies of this Memorandum and Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
July _10_, 2012

/s/ CHERYL POLLAK

Cheryl L. Pollak
United States Magistrate Judge

25